UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 2:22-CR-20066 |
| ASHANTE S. CORRUTHERS, | ) ) ) | |
| Defendant. | ) | |

### ASHANTAE CORRUTHERS' SENTANCING MEMORANDUM

NOW COMES Defendant, ASHANTAE CORRUTHERS, through her counsel, JOSHUA B. ADAMS, and respectfully requests, pursuant to 18 U.S.C. § 3553(a), and *United States v. Booker*, 543 U.S. 220 (2005) and its progeny, that this Court set Ms. Corruthers' total offense level at 12 and Criminal History category I, for an advisory sentencing guideline range of 10-16 months imprisonment. Ms. Corruthers respectfully requests that this honorable court impose a sentence within the guidelines. Such a sentence is sufficient, but not greater than necessary, to comply with the purposes of sentencing and is supported by Ms. Corruthers' personal history and characteristics, the nature and circumstances of this offense, and to account for sentences given to similarly-situated defendants . In support of her request, Ms. Corruthers states the following.

1

## I. Sentencing Request

Ashantae Corruthers is a 29-year-old single mother of two children ages 13 and 7. Ashantae has full custody of both of her boys. Ashantae works at AngelKare in Indianapolis, and Amazon, and she is the sole support for her children. The father of her children is not in the picture and does not help support the children. If Ms. Corruthers' is sentenced to a lengthy period of incarceration, her children will be without the only parent they have ever known. Their caregiving will fall upon Ms. Corruthers' mother.

Ms. Corruthers made a series of poor choices that led to her indictment in this case. When Ms. Corruthers agreed to purchase the gun for Regina Lewis. She made a decision that she will regret for the rest of her life. Up until she made that fateful decision, she led a law-abiding life. She has zero criminal history points. For her conduct, Ashantae is deeply ashamed and remorseful.

It is important to recognize that this sentence hearing is about Ashantae Corruthers. Not about a murder that occurred that Ms. Corruthers is not responsible for. This does not diminish the seriousness of the officer's death or the tremendous loss his family suffered. However, simply because the law does not provide a way to punish Ms. Corruthers for this officer's death does not mean this

sentencing should be a way to indirectly sentence Ms. Corruthers to a higher term of imprisonment.

This incident does not define Ms. Corrothers's life. She accepts responsibility for her conduct and did not contest the facts alleged in this case. She has no violations while on Pre-Trial release and remains gainfully employed and continues to support her children. A sentence within the advisory guideline range of 18-24 months accounts for Ms. Corruthers' conduct, her impeccable record on pre-trial release, and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and is sufficient, but not greater than necessary to achieve the sentencing goals of 18 U.S.C. § 3553(a).

### III.   A SENTENCE WITHIN THE ADVISORY GUIDELINERANGE IS SUFFICENT TO ACHIEVE THE PURPOSES OF PUNISHMENT STATED IN 18 U.S.C. § 3553(a)

In *United States v. Booker*, the Supreme Court effectively rendered the United States Sentencing Guidelines (USSG) advisory.  543 U.S. 220 (2005). However, the sentencing court is still required to follow the list of factors enumerated in § 3553(a). In *Rita v. United States*, the Court held that district court judges are required "to 'impose a sentence sufficient, but not greater than necessary, to comply with the basic aims of sentencing in § 3553(a)." 127 S.Ct. at 2469.

Post-*Booker*, the district court should place "no limitation" on the information concerning the background, character, and conduct of a person convicted of an offense. *See* 18 U.S.C. § 3661; *Booker*, 125 S.Ct. at 760. There are several "individual characteristics . . . not ordinarily considered under the Guidelines," but are still "matters that § 3553(a) authorizes the sentencing judge to consider." *Rita*, 127 S.Ct. at 2473 (Stevens, J., concurring). With these principles in mind, we turn to Ms. Corruthers' sentencing.

*1.     The nature and circumstances of Ms. Corruthers' conduct justify a sentence within the advisory guideline range.*

The court is familiar with the facts of this case. There is no dispute that Ms. Corruthers' decision resulted in an extremely serious situation. However, Ms. Corruthers' asserts that an above-guideline sentence is not warranted in this case merely because an officer died. According to the Guidelines, the officer is not a victim of Ms. Corruthers' conduct. To impose an above guideline sentence on this factor alone is substantively unreasonable. An above guidelines sentence would result in an unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct. In actuality, an above-guideline sentence would result in a harsher in a longer sentence for Ms.

Corruthers as compared to other defendants who received less time and purchased multiple firearms over the course of a lengthy period of time.

To impress upon this fact, Ms. Corruthers' has mitigating factors that Ms. Lewis did not. First, and perhaps most importantly, after Ms. Corruthers purchased the firearm in question, Ashantae also tried to buy the gun back to take it out of the hands of a convicted felon. She expressed regret and remorse for becoming involved in this straw purchase. This occurred before law enforcement became involved in this case, and before the officer died. This was Ms. Corruthers' voluntarily conduct, her own choice to not engage in further criminal conduct. This is significant mitigation that supports the argument for a low-end or below guidelines sentence.

This Court found that Ms. Lewis was "the fulcrum, the enabler, the quarterback that enabled this whole offense to take place. You put the two together, Corruthers and Lafayette, and acted as the middle person to get the firearm into Mr. Lafayette's hands." (Dkt. 83, p. 91).Ms. Corruthers is less culpable than Ms. Lewis and should be sentenced accordingly.



Ms. Corruthers also acknowledges that she lied to law enforcement when interviewed and at her post-arrest statement She pled guilty to these facts and did not contest any of the substance of this interaction. While not justified, it is important to put her actions in context. First, Ms. Corruthers' has no criminal history and from all accounts, little interaction with law enforcement. Second, when approached by officers, they told her that an officer died and she may have provided the firearm. Ms. Corruthers panicked and thought she could be responsible for a murder. While she should have chosen to remain silent and not lie, it is understandable why a single mom would want to remove herself from her involvement in this case.

Ashantae panicked and made the wrong decision. She feared being charged with murder. As someone unfamiliar with police and the criminal justice system, she had no basis to think otherwise. She does not believe this excuses her conduct, and she takes full responsibility for it, but her spur of the moment decision has led here to today. However, after some time and consideration, when it came time to face these charges in court, Ms. Corruthers honestly and truthfully admitted her conduct and did not force the government to prove at trial.

There are ripple effects in every criminal case. An individual's actions may have unintended consequences that affect people not connected with the original crime. While it is tragic that a family lost a husband and father, that should not be laid at the feet of Ms. Corruthers. She respectfully suggests that any sentence this honorable court may fashion considers her lack of criminal history, spotless record on pre-trial release, and the fact that she is significantly different from her co-defendant.

Ms. Corruthers' would not have become involved in this offense if not for Ms. Lewis. Ms. Lewis approached Ms. Corruthers' with this idea. Undoubtedly, Ms. Corruthers' agreed, she would not have been involved but for the insistence of Ms. Lewis.

2. *Ms. Corruthers' personal history and characteristics warrant a advisory guideline sentence.*

Ashantae has zero criminal history points. She qualifies for the one-point reduction under the new guidelines provision §4C1.1(a). This puts her in a different category than her co-defendant who was at a Criminal History III.

Moreover, Ms. Corruthers is a single mother who provides for her two children. She receives minimal child support, so the entire weight of providing for her children falls upon her shoulders. Ashantae and her children live with her mother, who she helps with rent and other financial responsibilites. Moreover, Ms. Corruther's grandmother had recently been diagnosed with kindey failure and will move in with Ashantae and her family. If Ms. Corruthers' is sentenced to a lengthy period of incarceration, her children will be without the only parent they have known. Their caregiving will fall upon Ms. Corruthers' mother who is 51 years old and will have to struggle with the loss of financial support Ashantae provided.

Ms. Corruthers works hard to provide for her family. During her pre-trial release she has remained employed, not engaged in further criminal conduct, and abided by all conditions this honorable court has imposed. Ms. Corruthers' has shown this court a tract record of following court orders, living a law-abiding life, and demonstrating that she will not

recidivate. Her post-arrest conduct is further mitigating evidence that a within guideline sentence is sufficient, but not greater than necessary to achieve the goals of sentencing. Lastly, prior to this case, Ashantae has not had any interaction with the criminal justice system, except for a driving on a suspended license arrest in 2014.

3.   *The need for specific deterrence*

In this case, specific deterrence is perhaps the most significant factor laid out in §3553(a). Ms. Corruthers has never spent a night in jail. The time she waited for her detention hearing in this matter was the longest she has ever served in custody. Moreover, because she is now a convicted felon, she will never again be in the position to act as a straw purchaser.

A sentence should send a message to not only Ms. Corruthers but also any individuals who consider buying firearms for a prohibited person. Ms. Corruthers is a Criminal History Category I. Any sentence will have a deterrent effect. Therefore, the issue whether a sentence of at or below the guidelines range will have the same effect as an above guidelines sentence. Because any sentence will be deterrent, this honorable court should decide in favor of less incarceration. An above guidelines sentence is only punitive. It is, in fact, greater than necessary to comply with the

goals of sentencing, given Ms. Corruthers' personal history and characteristics.

The Supreme Court in *Graham v. Florida* stated that "a sentence lacking any legitimate penological justification is by its nature disproportionate to the offense." 560 U.S. 48, 71 (2010). In light of this, it has become increasingly recognized that it is the certainty, rather than severity, of punishment that achieves deterrence. In May 2016, the U.S. Department of Justice's National Institute of Justice published a fact sheet entitled Five Things About Deterrence, which summarized the research that has been done on deterrence. Three things are particularly important to note: 1) the certainty of being caught is a vastly more powerful deterrent than punishment; 2) sending an individual convicted of crime isn't a very effective way of deterring crime; and 3) increasing the severity of punishment does little to deter crime.

The likelihood that a defendant will engage in future criminal conduct is "a central factor that district courts must assess when imposing sentence." *Pepper v. United States*, 562 U.S. 476, 492 (2011). Any term of incarceration will have a deterrent effect because Ashantae never served a term of imprisonment in her past. Moreover, she will never be in a position to commit this crime in the future. With a felony conviction, she will be unable to lawfully purchase handguns. It is extremely unlikely,

given her history, that Ashantae would purchase illegal firearms. In fact, as mentioned earlier, when asked by her co-defendant to buy another firearm, Ashantae refused. Ashantae has demonstrated, before any involvement with law enforcement or the criminal justice system, which will not recidivate. As such, a within or below guidelines sentence is sufficient, but not greater than necessary to achieve the sentencing goals of §3553(a).

IV. An above guidelines sentence is substantive unreasonable.

"[I]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted." U.S.S.G. § 4A1.3(b)(1). Although the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), rendered the departure provisions "obsolete," "district courts can still take guidance from the departure provisions" and consider them "when assessing the § 3553(a) factors." *United States v. Bell*, 887 F.3d 795, 798 (7th Cir. 2018) (citation and internal quotation marks omitted).

"[S]ubstantive reasonableness occupies a range, not a point," and an above-Guideline sentence is neither presumptively nor absolutely unreasonable. *United States v. Morgan*, 987 F.3d 627, 632 (7th Cir. 2021).

When examining above-Guidelines sentences, we "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variance." *Gall*, 552 U.S. at 50, 128 S.Ct. 586; *see also Morgan*, 987 F.3d at 632. So long as the sentencing judge gives an "adequate justification" for the departure, he may "impose a sentence above the guidelines range if he believes the range is too lenient." *Morgan*, 987 F.3d at 632 (internal quotations omitted).

Ms. Corruthers submits the following cases for this Court's consideration:

| Case Name | Case No. | Charge | Charge | Sentence Imposed | Number of firearms/Other factors |
|---|---|---|---|---|---|
| *USA v. Brittany Green* | 22 CR 309 | 922(a)(6) | NDIL | SOAR-Deferred prosecution | |
| *USA v. Mario Marquez* | 23 CR 57 | 922(a)(6) | D.NH | 42 Months BOP | at least 5, per indictment |
| *USA v. Jamel Danzy* | 21 CR 491 | 371 | NDIL | 30 months BOP | 1, firearm used in murder of Chicago P.D. Ella French |
| *USA v. Raquel Braswell* | 23 CR 0007 | 922(a)(6) | EDNC | 60 months BOP | 32 Firearms, per indictment |
| *USA v. Paul Fowlkes* | 17 CR 0042 | 922 (a)(6) | INND | 30 months BOP | 25 Firearms over 1 year period |
| *USA v. Alexandria Flick* | 21 CR 181 | 922(a)(6) | INSD | 36 months Probation | 17 Firearms, as part of conspiracy |

These cases deal with straw purchasers and making false claims pursuant to 18 USC 922(a)(6). While Ashantae recognizes that she pled guilty to conspiracy to illegally purchase and transfer firearms, and engage in misleading conduct, the underlying conduct in these cases is similar. In each case, the defendant lied on an ATF form and said the purchased firearms were for themselves. Ashantae only bought one gun.

In a majority of these cases, the defendants purchased 10 or more firearms. In one case specifically, Jamel Danzy purchased the firearm that wound up killing Chicago Police officer Ella French. He received a sentence of 30 months imprisonment.

 This is Ashantae's first and only criminal conviction. While on bond, Ms. Corruthers has maintained employment and cared for her 10-year-old son. She has no violations. From her conduct post-arrest, she has demonstrated to this honorable court how seriously she takes this case and understands the severity of her actions.

 Moreover, a sentence of 108 months, similar to her co-defendant is substantively unreasonable. Before law enforcement approached her about the firearm, Ashantae refused to give Mr. Lafayette a second handgun. In fact, Ashantae told her co-defendant that she wished she never got involved and would never buy another firearm. This is clear evidence of not only true remorse but also a lack of recidivism. Ashantae has learned her lesson. Taking her away from her children and her livelihood for eight years is merely punitive and not in line with sentences that defendants with similar records who have been found guilty of similar conduct received. It is indeed tragic a law enforcement offer died in the line of duty. But the shooter is dead. The charges in this case do not permit for Ashantae to step into his shoes and suffer the consequences for his

actions. She is the straw purchaser.

The guidelines for this offense are in fact low. However, they are the express will of Congress and are the product of the Sentencing Commission's empirical expertise. Ms. Corruthers acknowledges that after this crime occurred, Congress increased the statutory maximum penalty. Any individual charged with this offense will undoubtedly have a Criminal History I. After all, Ashantae, or any person charged with this crime cannot commit this crime if he or she has a felony conviction. Congress understands this and baked that fact into the base offense level along with any enhancements. The government should not be able to ask for an above guidelines sentence solely on the basis that the range seems too low.

Sadly, an individual died. However, if this person had not been a police officer, would the government seek the same punitive sentence? His death was senseless. The co-defendant received a sentence of approximately 400 percent above the high end of the guidelines. Ms. Corruthers, on the other hand, has no criminal history and a spotless record on pre-trial release. The government attempted to revoke her bond at the Change of Plea hearing. The Magistrate Judge recognized Ms. Corruther's exemplary behavior while on release and denied the motion.

Lastly, Ashantae proposes alternatives to straight incarceration. She could serve part of her sentence in BOP custody, and the remainder of

14

it on weekends at the Salvation Army or at a local jail. Ms. Corruthers respectfully requests that this Court consider a sentence of 18 months' probation with the condition of home detention. "Home detention may be imposed as a condition of probation or supervised release, but only as a substitute for imprisonment." U.S.S.G. § 5F1.2. Here, Ms. Corruthers is statutorily eligible for a sentence of 1-5 years of probation. 18 U.S.C. § 3561(c)(1). The advisory guidelines recommend a sentence of 10-16 months' imprisonment, however, home detention as a substitute for imprisonment is permitted.

> 'Home detention' means a program of confinement and supervision that restricts the defendant to his place of residence continuously, except for authorized absences, enforced by appropriate means of surveillance by the probation office. When an order of home detention is imposed, the defendant is required to be in his place of residence at all times except for approved absences for gainful employment, community service, religious services, medical care, educational or training programs, and such other times as may be specifically authorized. Electronic monitoring is an appropriate means of surveillance for home detention. However, alternative means of surveillance may be used if appropriate.

U.S.S.G. § 5F1.2, App. n.1. Ms. Corruthers is a perfect candidate for home detention in lieu of imprisonment. Home detention would allow Ms. Corruthers to continue working and caring for her children. Home detention would continue to meet the dictates of 18 U.S.C. § 3553(a) and ensure that Ms. Corruthers' sentence is sufficient but not greater than

necessary.

Here, probation is a sufficiently serious sentence. In *Gall*, the Supreme Court reminded district courts that probation involves a "substantial restriction of freedom," and faulted the court below for discounting that fact. *Gall v. United States*, 552 U.S. 38, 48 (2007). The Supreme Court stated that "custodial sentences are qualitatively more severe than probationary sentences of equivalent terms," *id*. at 48, but § 3553(a) does not command courts to send the strongest message possible; it commands them to impose a sentence that is "sufficient, but not greater than necessary" in the circumstances of each case, 18 U.S.C. § 3553(a). *See United States v. Warner*, 792 F.3d 847, 860 (7th Cir. 2015). Finally, while the guidelines range is the starting place, the judge "may not presume that the Guidelines range is reasonable." *Gall*, 552 U.S. at 50 (emphasis added). "[T]he Guidelines are only one of the factors to consider when imposing sentence, and § 3553(a)(3) directs the judge to consider sentences other than imprisonment." *Id*. at 59.

The goal of sentencing is not only punishment, but rehabilitation. A hybrid sentence or probation with home detention would permit Ashantae to provide for her children while paying her debt for her conduct and would meet the dictates of § 3553(a).

## IV. Conclusion

Therefore, based on the circumstances of Ms. Corruthers' case, her personal history, and the need for to avoid sentencing disparities, respectfully requests this honorable court sentence her to a guideline sentence in a manner that meets the special circumstances of her case.

                                      Respectfully submitted,

                                      /s/Joshua B. Adams
                                      Joshua B. Adams
                                      Counsel for
                                      Ashantae Corruthers

Joshua B. Adams
LAW OFFICES OF JOSHUA B. ADAMS, P.C.
900 W. Jackson Blvd., Suite 7 E
Chicago, IL 60604
(312) 566-9173